[Cite as *In re J.R.*, 2011-Ohio-2648.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
|  | : | William B. Hoffman, P.J. |
|  | : | Julie A. Edwards, J. |
| J.R. | : | Patricia A. Delaney, J. |
|  | : |  |
|  | : | Case No. 11AP020006 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Civil Appeal from Tuscarawas County
                            Court of Common Pleas, Juvenile
                            Division, Case No. 10JN00087

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     May 27, 2011

APPEARANCES:

For Appellee -                          For Appellant –
Tuscarawas County Job &                 Charles Redman
Family Services
                                        E. MARIE SEIBER
DAVID W. HAVERFIELD                     P.O. Box 108
389 – 16th Street, S.W.                 Dennison, Ohio  44621
New Philadelphia, Ohio  44663

Guardian ad Litem

KAREN DUMMERMUTH
349 East High Avenue
P.O. Box 494
New Philadelphia, Ohio  44663

*Edwards, J.*

{¶1} Appellant, Charles Redman, appeals from the January 13, 2011, Judgment Entry of the Tuscarawas County Court of Common Pleas terminating appellant's parental rights and granting permanent custody of J.R. to Tuscarawas County Department of Job and Family Services.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant is the father of J.R. (DOB 11/17/94). Appellant and J.R.'s mother are not married.

{¶3} On March 8, 2010, Tuscarawas County Job and Family Services (TCJFS) filed a complaint alleging that J.R. was a neglected and/or dependent child. The complaint alleged that appellant and his wife, J.R.'s stepmother, had sent J.R. to stay with her mother knowing that her mother was a drug addict who had not had any contact or relationship with J.R. for two years and was unable to meet J.R.'s needs. Pursuant to a Judgment Entry filed on March 9, 2010, J.R. was placed in the temporary custody of TCJFS.

{¶4} On or about April 1, 2010, a case plan was filed that required appellant to submit to random hair follicle and urine screens as requested, to complete an alcohol and drug assessment and follow any recommendations, and to complete a psychological and follow all recommendations. The case plan also required appellant to complete individual parenting sessions.

{¶5} At an adjudicatory hearing on April 7, 2010, appellant and J.R.'s mother stipulated to a finding that J.R. was a dependent child[1] and the trial court ordered J.R. to

---

[1] The allegations of neglect were dismissed. The complaint was amended to allege that appellant knew that J.R.'s mother had a history of drug addiction.

remain in the temporary custody of TCJFS.  The trial court ordered appellant to report for an immediate drug screen as directed by TCJFS.

{¶6}   On October 21, 2010, TCJFS filed a Motion to Modify Prior Disposition. TCJFS, in its motion, sought permanent custody of J.R. TCJFS noted that since J.R.'s placement in foster care in March of 2010, appellant had not visited her. TCJFS further alleged in its motion that appellant and his wife had tested positive for marijuana at the outset of the case, that appellant had diluted a recent urine screen and refused to complete a saliva drug test and that appellant had not completed the necessary drug and alcohol evaluation. TCJFS, in its motion, further stated, in relevant part, as follows:

{¶7}   "J.R. has remained in the same foster home since her placement in March.  She is adamant that she wishes no further contact with her family.  She has done very well in foster care, not exhibiting any of the extreme behaviors that her father and step-mother complained about prior to her removal.  Her current foster parents will not adopt her, but their neighbors who are licensed foster parents, and with whom J.R. has a very good relationship have indicated the desire to do so.  J.R. has clearly expressed to the agency that she wishes this to happen."

{¶8}   On November 12, 2010, appellant's counsel filed a motion to withdraw, indicating that appellant's wife had told him that his services were no longer needed. The motion to withdraw was granted on or about December 9, 2010.

{¶9}   A hearing on the Motion to Modify Prior Disposition was held on January 11, 2011.  Appellant did not appear at the same. Prior to the hearing, J.R.'s mother had stipulated to a grant of permanent custody to TCJFS.

{¶10} The only witness to testify at the hearing was Jaime Grunder, a caseworker with TCJFS who was responsible for J.R.'s case. Grunder testified that J.R. had not had contact with appellant since March 8, 2010, but that appellant had written her a letter. When asked why appellant had not visited J.R., she testified that J.R. wanted nothing to do with appellant. The following is an excerpt from Grunder's testimony:

{¶11} "Q. Was there a Case Plan developed for him [appellant]?

{¶12} "A. Yes.

{¶13} "Q. Uh, did he do any of the services on the Case Plan?

{¶14} "A. He did some of them.

{¶15} "Q. Okay, what did he do?

{¶16} "A. He did some parenting with Deb Whitney, because he couldn't do it, the other case manager, or the other family service aide, there was a conflict, and then he, uh, completed his psychological.

{¶17} "Q. And what was he required to do that he didn't do?

{¶18} "A. He would not take drug screens, whether it be hair, saliva, or urine. Uh, he did not do a drug and alcohol assessment and he did not do an anger assessment.

{¶19} "Q. Okay, has he met with you regularly during the Case?

{¶20} "A. No.

{¶21} "Q. Did he actually move and not give you his new address at one point?

{¶22} "A. That's correct."  Transcript at 4-5.

{¶23} Grunder further testified that J.R. was doing well in her foster home and that while she had some behavioral problems, they were "typical teenager stuff." Transcript at 5. She testified that a relative of J.R.'s current foster family wanted to adopt J.R. and was in the process of finishing their foster care license. Grunder testified that J.R. said that she wanted to be adopted by them. When asked whether she believed that TCJFS expended reasonable efforts to reunify J.R. with appellant and whether she believed that it would be in J.R.s best interest to be placed in the permanent custody of TCJFS, Grunder answered affirmatively.

{¶24} As memorialized in a Judgment Entry filed on January 13, 2011, the trial court terminated appellant's parental rights and granted permanent custody of J.R. to TCJFS. The trial court, in its Judgment Entry, found that J.R. could not and should not be placed with either parent within a reasonable time, that despite reasonable efforts and planning to remedy the problems that caused J.R.'s removal, both appellant and J.R.'s mother had failed continuously and repeatedly to substantially remedy the conditions causing her removal. The trial court also found that appellant and J.R.'s mother had demonstrated a lack of commitment to her and had failed to provide her with an adequate home "at this time and cannot do so within a year of this litigation." Finally, the court found that, after considering the factors contained in R.C. 2151.414, it was in J.R.'s best interest to be placed in the permanent custody of TCJFS.

{¶25} Appellant now raises the following assignment of error on appeal:

{¶26} "THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY OF J.R. WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."

I

{¶27} Appellant, in his sole assignment of error, argues that the trial court's decision to grant permanent custody of J.R. to TCJFS was against the manifest weight of the evidence.

{¶28} In the case sub judice, appellant specifically and solely argues that while the trial court found that appellant was given a reasonable amount of time in which to reunify with J.R., there was not clear and convincing evidence supporting such finding. Appellant notes that while Jaime Grunder, the caseworker, testified that a case plan was adopted and that appellant complied with certain services and not others, she "gave no time frame for anything. It is only known that the case plan was developed sometime after the Complaint was filed and that actions and inactions of [appellant] occurred sometime before the permanent custody hearing." Based on the lack of a timeline, appellant argues that there is not clear and convincing evidence that reunification could not occur within a reasonable time.

{¶29} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 120 N.E.2d 118; *In re: Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 481 N.E.2d 613.

{¶30}   In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60; See also, *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel,* 55 Ohio St.3d at 74.

{¶31}   Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273:

{¶32}   "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

{¶33}   Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 1997–Ohio–260, 419, 674 N.E.2d 1159; see, also, *In re: Christian,* Athens App. No.

04CA1 0, 2004–Ohio–3146; *In re: C. W.,* Montgomery App. No. 20140, 2004–Ohio–2040.

**{¶34}** R.C. 2151.414 states, in relevant part, as follows: (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

**{¶35}** "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."

**{¶36}** Revised Code 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with a parent within a reasonable time. If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with [the] parent within a reasonable time or should not be placed with either parent":

{¶37} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home. In determining whether the parents have substantially remedied the conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;* * * ...

{¶38} As is stated above, the permanent custody hearing was held on January 11, 2011. Appellant, whose wife had fired his attorney, did not appear at the same. Following such hearing, the trial court found that J.R. could not be placed with appellant within a reasonable time. The trial court found that, following the placement of J.R. outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that initially caused the child to be placed outside the home, appellant failed continuously and repeatedly to substantially remedy the conditions that caused J.R. to be placed outside the child's home.

{¶39} We find that such findings are supported by the record. A case plan was filed in this case on or about April 1, 2010, shortly after the complaint was filed. Testimony was adduced that appellant failed to comply with the same by failing to complete drug screens and failing to complete anger, drug and alcohol assessments.

Grunder, the case worker, testified that appellant did not meet with her regularly and moved without providing her with his new address.

{¶40}  Based on the forgoing, we find that the trial court did not err in finding that appellant had failed continuously and repeatedly to substantially remedy the conditions causing J.R. to be placed outside the home and that J.R. could not and should not be placed in appellant's home within a reasonable time. We note that appellant does not challenge the trial court's finding that it was in J.R.'s best interest to be placed in the permanent custody of TCJFS.

{¶41}  Appellant's sole assignment of error is, therefore, overruled.

{¶42}  Accordingly the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.

By: Edwards, J.

Hoffman, P.J. and

Delaney, J. concur

_____

_____

_____

JUDGES

JAE/d0503

[Cite as *In re J.R.*, 2011-Ohio-2648.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:              :

                               :

           J.R.                  :

                               :

                               :       JUDGMENT ENTRY

                               :

                               :

                               :       CASE NO. 11AP020006

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.

_____

_____

_____

JUDGES